

1  AARON EZROJ (SBN 263711)
   aaron.ezroj@qtamlaw.com
2  1024 Bayside Dr. # 349
   Newport Beach, CA 92660
3  Telephone: 949-312-1042

4
   Attorney for Relator
5

**FILED**

Sep 06 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY            s/ GloriaVocal            DEPUTY

ORDERED UNSEALED on 02/06/2025   s/ ElizabethS

6                           SEALED
7
8              UNITED STATES DISTRICT COURT
9            SOUTHERN DISTRICT OF CALIFORNIA

10 [UNDER SEAL],                Case No.:  '24CV1600 W    AHG

11           Plaintiffs,        **COMPLAINT FOR VIOLATIONS OF**
                                **THE FALSE CLAIMS ACT**
12       vs.
                                **DEMAND FOR JURY TRIAL**
13 [UNDER SEAL],
                                **[FILED IN CAMERA AND UNDER SEAL**
14           Defendants.        **PURSUANT TO 31 U.S.C. § 3730(b)(2)]**

15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT

AARON EZROJ (SBN 263711)
aaron.ezroj@qtamlaw.com
1024 Bayside Dr. # 349
Newport Beach, CA 92660
Telephone: 949-312-1042

Attorney for Relator

**FILED**

Sep 06 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/ GloriaVocal        DEPUTY

**SEALED**

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* PPP ELIGIBILITY EXPERTS LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>HOEHN MOTORS INC. dba MERCEDES-BENZ OF CARLSBAD; THE HOEHN COMPANY INC. dba HOEHN HONDA CARLSBAD; HOEHN JLR, INC. dba LAND ROVER CARLSBAD, JAGUAR CARLSBAD; HOEHN BUICK GMC CADILLAC INC. dba HOEHN BUICK GMC CADILLAC; HOEHN OF TEMECULA INC. dba AUDI TEMECULA; HOEHN GROUP LLC; HOEHN ENTERPRISE I LLC; HOEHN ENTERPRISE 4 TEMECULA LLC; HOEHN JLR LLC; SUSANAH HOEHN PETERSON; THEODORE WILLIAM HOEHN III; THEODORE WILLIAM HOEHN IV; ROBERT AUSTIN HOEHN<br><br>Defendants. | Case No.: **'24CV1600 W    AHG**<br><br>**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**[FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)]** |

1     Pursuant to the False Claims Act 31 U.S.C. §§ 3729 *et seq*., PPP Eligibility Experts LLC, on

2  behalf of the United States of America, alleges the following:

3                                    **INTRODUCTION**

4     1.     The United States Congress passed the Coronavirus Aid, Relief, and Economic

5  Security ("CARES") Act to help stabilize the economy during the COVID pandemic. The CARES

6  Act created the Paycheck Protection Program ("PPP") to provide necessary payroll cost support for

7  eligible small businesses. Millions of applicants collectively received hundreds of billions of dollars

8  through PPP loans.

9     2.     Hoehn Motors Inc. doing business as Mercedes-Benz of Carlsbad, The Hoehn

10  Company Inc. doing business as Hoehn Honda Carlsbad, Hoehn JLR, Inc. doing business as Land

11  Rover Carlsbad, Jaguar Carlsbad, Hoehn Buick GMC Cadillac Inc. doing business as Hoehn Buick

12  GMC Cadillac, Hoehn of Temecula Inc. doing business as Audi Temecula, Hoehn Group LLC,

13  Hoehn Enterprise I LLC, Hoehn Enterprise 4 Temecula LLC, Hoehn JLR LLC, Susanah Hoehn

14  Peterson, Theodore William Hoehn III, Theodore William Hoehn IV, and Robert Austin Hoehn (the

15  "Defendants") committed fraud in PPP applications for **at least $11,083,181 of PPP loans** and

16  forgiveness applications for these loans. Lenders also received tens of thousands of dollars in loan

17  processing fees.

18     3.     Hoehn Motors is a large new automobile dealership group in Southern California.

19  Affiliated entities of Hoehn Motors consist of seven dealerships located in Southern California.

20  Certain affiliated entities of Hoehn Motors specialize in the sale of luxury vehicles. Per Hoehn

21  Motors' website, Hoehn Motors "proudly represents 7 brands in Carlsbad (Audi, Honda, Jaguar,

22  Land Rover, Porsche, Mercedes-Benz and Sprinter) and a second Audi dealership in Temecula."

23  See https://www.hoehnmotors.com. Affiliated entities of Hoehn Motors sell many hundreds of

24  automobiles, have many hundreds of employees and own valuable real estate worth tens of millions

25  of dollars.

26     4.     PPP loan applications did not reflect the true size of affiliated entities of Hoehn

27  Motors. Instead, affiliated entities of Hoehn Motors knowingly falsely claimed eligibility for PPP

28  loans and supported their applications with documents that did not reveal information on their true

1 | number of employees, tangible net worth, income and economic need.

2 |     5.    Such false claims and statements of affiliated entities of Hoehn Motors were material

3 | in affiliated entities of Hoehn Motors receiving PPP loans and lenders receiving loan processing

4 | fees. Without these false claims and statements, affiliated entities of Hoehn Motors would not have

5 | received PPP loans and their lenders would not have received loan processing fees. These claims

6 | and statements thus violate the False Claims Act, §§ 31 U.S.C. 3729 *et seq*.

7 |     6.    PPP Eligibility Experts LLC (the "Relator") brings this action on behalf of the

8 | United States of America against affiliated entities of Hoehn Motors for treble damages and civil

9 | penalties arising from the Defendants' false claims in violation of the False Claims Act, 31 U.S.C.

10 | §§ 3729 *et seq*.

11 | **PARTIES**

12 |     7.    Relator PPP Eligibility Experts LLC was formed to identify applicants who

13 | fraudulently obtained PPP funds. Relying on their finance, real estate, property management and

14 | other pertinent expertise, Relator serves as the original source of information identifying applicants

15 | who fraudulently obtained PPP funds and sought forgiveness of the same. Relator's principal place

16 | of business is in Irvine, California.

17 |     8.    Defendant Hoehn Motors Inc. doing business as Mercedes-Benz of Carlsbad is an

18 | automotive dealership located at 5475 Car Country Dr., Carlsbad, CA 92008. Mercedes-Benz of

19 | Carlsbad is currently listed among 7 dealerships on the Hoehn Motors website.

20 |     9.    Defendant The Hoehn Company Inc. doing business as Hoehn Honda Carlsbad is an

21 | automotive dealership located at 5454 Paseo Del Norte, Carlsbad, CA 92008. Hoehn Honda

22 | Carlsbad is currently listed among 7 dealerships on the Hoehn Motors website.

23 |     10.    Defendant Hoehn JLR, Inc. doing business as Land Rover Carlsbad, Jaguar Carlsbad

24 | is an automotive dealership located at 5334 Paseo Del Norte, Carlsbad, CA 92008. Land Rover

25 | Carlsbad are Jaguar Carlsbad are each currently listed among 7 dealerships on the Hoehn Motors

26 | website.

27 |     11.    Defendant Hoehn Buick GMC Cadillac Inc. doing business as Hoehn Buick GMC

28 | Cadillac is an automotive dealership located at 5550 Paseo Del Norte, Carlsbad, CA 92008.

12.     Defendant Hoehn of Temecula Inc. doing business as Audi Temecula is an automotive dealership located at 40955 Temecula Center Dr., Temecula, CA 92591. Audi Temecula is currently listed among 7 dealerships on the Hoehn Motors website.

13.     Defendant Hoehn Group LLC is a real estate holding company with its principal place of business at 5475 Car Country Dr., Carlsbad, CA 92008.

14.     Defendant Hoehn Enterprise I LLC is a real estate holding company with its principal place of business at 5475 Car Country Dr., Carlsbad, CA 92008.

15.     Defendant Hoehn Enterprise 4 Temecula LLC is a real estate holding company with its principal place of business at 5475 Car Country Dr., Carlsbad, CA 92008.

16.     Defendant Hoehn JLR LLC is a real estate holding company with its principal place of business at 5475 Car Country Dr., Carlsbad, CA 92008.

17.     Defendant Susanah Hoehn Peterson is an officer, registered agent and owner of affiliated entities of Hoehn Motors.

18.     Defendant Theodore William Hoehn III is an officer, director and owner of certain affiliated entities of Hoehn Motors.

19.     Defendant Theodore William Hoehn IV is a manager and owner of certain affiliated entities of Hoehn Motors.

20.     Defendant Robert Austin Hoehn is a director and owner of certain affiliated entities of Hoehn Motors.

**JURISDICTION AND VENUE**

21.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a). The latter section specifically confers subject matter jurisdiction for this type of action, any action under 31 U.S.C. § 3730.

22.     This Court has personal jurisdiction over the Defendants pursuant to 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a) because one or more of the Defendants transacts business in the Southern District of California. Moreover, 31 U.S.C. § 3732(a) allows for nationwide service of process.

23.     Venue is proper in the Southern District of California pursuant to 31 U.S.C. §

1  3732(a) and 28 U.S.C. § 1391(b), because one or more of the Defendants transacts business in the

2  Southern District of California. Moreover, events giving rise to this action took place in the

3  Southern District of California.

4      24.    There has been no statutorily relevant public disclosure as articulated in 31 U.S.C §

5  3730(e)(4)(A). Relator therefore has direct and independent knowledge of the information on which

6  the allegations set forth in this Complaint are based and is the original source of the allegations

7  contained herein. 31 U.S.C §§ 3730(e)(4)(A)-(B).

8                                    **FALSE CLAIMS ACT**

9      25.    The False Claims Act, 31 U.S.C. §§ 3729 *et seq*. was established to allow the

10  government to collect money from parties that have made false claims and statements to

11  fraudulently obtain government funding.

12     26.    Pursuant to 31 U.S.C. § 3729(a)(1)(A), a party makes a false claim when they

13  knowingly present, or cause to be presented, a false or fraudulent claim for payment or approval.

14     27.    Pursuant to 31 U.S.C. § 3729(a)(1)(B), a party makes a false statement when they

15  knowingly make, use or cause to be made or used, a false record or statement material to a false or

16  fraudulent claim.

17     28.    Pursuant to 31 U.S.C. § 3729(a)(1)(C), a party violates the False Claims Act when

18  they conspire to commit a violation of particular subparagraphs of the False Claims Act, including

19  subparagraphs (a)(1)(A), (B) or (C).

20     29.    Pursuant to 31 U.S.C. § 3729(a)(1)(G), a party knowingly makes, uses, or causes to

21  be made or used, a false record or statement material to an obligation to pay or transmit money or

22  property to the government, or knowingly conceals or knowingly and improperly avoids or

23  decreases an obligation to pay or transit money or property to the government.

24     30.    The term "knowingly" means that a party, with respect to information, (i) has actual

25  knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the

26  information; or (iii) acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. §

27  3729(b)(1)(A). Knowingly does not require proof of specific intent to defraud. 31 U.S.C. §

28  3729(b)(1)(B).

## PAYCHECK PROTECTION PROGRAM

31.    In 2020, the United States Congress passed the CARES Act so that small businesses could obtain relief during the COVID pandemic. The CARES Act allowed for First Draw PPP loans with various requirements for different types of businesses. In 2021, the United Stated Congress passed the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act. This Act allowed for Second Draw PPP loans with very specific requirements for businesses. Millions of applicants collectively received hundreds of billions of dollars through the Paycheck Protection Program ("PPP") which was administered by the Small Business Administration. While it was the intent of the United States Congress that these funds be used by eligible businesses to support payroll costs, certain ineligible businesses applied for PPP funds and used these funds for purposes that were not the intent of the United States Congress. Moreover, certain ineligible businesses sought loan forgiveness even though they were never eligible for PPP funds and did not use the funds for purposes that were the intent of the United States Congress.

32.    Entities were able to apply for initial PPP loans (i.e., First Draw PPP loans) in 2020.

33.    First Draw PPP loan applications required applicants to certify to the following:

> I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from the SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

34.    Within First Draw PPP loan applications, applicants were asked to mark Yes or No in response to the following question 3.

> Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as addendum A.

35.    Addendum A was supposed to include all other businesses with common management and ownership, i.e., affiliated entities. Common management and ownership are defined in federal regulations 13 C.F.R. §§ 121.103(e) and 121.301(f). If one or more officers, directors, managing members or general partners of a business controls the Board of Directors or

1    the management of another business, the businesses are affiliated. 13 C.F.R. § 121.103(e). Common

2    ownership can be established in a number of ways. 13 C.F.R. § 121.301(f). Either common

3    management or ownership is sufficient on their own to establish affiliation.

4         36.    The CARES Act and federal regulations specified that applicants were only eligible

5    for First Draw PPP loans if affiliated entities had under 500 employees, met a pertinent industry size

6    standard, or met the alternative size standard. At the time of application, the industry size standard

7    for new car dealerships was having less than 200 employees which does not provide any additional

8    flexibility for PPP eligibility. U.S. Small Business Administration, Table of Small Business Size

9    Standards, Subsector 441110 (August 2019). Hoehn Motors is primarily a new car dealership and

10   thus the pertinent industry size standard for affiliated entity applicants was the industry size

11   standard for new car dealerships. The alternative size standard required both not having more than

12   $5 million in average net income after Federal income taxes (excluding any carry-over losses) for

13   the two preceding full fiscal years and not having more than $15 million in tangible net worth. If an

14   applicant had either more than $5 million in average net income after Federal income taxes

15   (excluding any carry-over losses) for the two preceding full fiscal years or more than $15 million in

16   tangible net worth, the applicant was not eligible under the alternative size standard. 13 C.F.R. §

17   121.301.

18        37.    First Draw PPP loan applications also include the following certification:

19             Current economic uncertainty makes this loan request necessary to support the
               ongoing operations of the Applicant.

20

21        38.    When applying for forgiveness for a First Draw PPP loan, applicants had to certify

22   that PPP loan proceeds were used for eligible purposes and certify that information provided in all

23   supporting documents and forms was true and correct in all material respects.

24        39.    Entities were able to apply for additional PPP loans (i.e., second draw PPP loans) in

25   2021.

26        40.    Similar to First Draw PPP loan applications, Second Draw PPP loan applications

27   required applicants to certify to the following:

28             I further certify that the information provided in this application and the information
               provided in all supporting documents and forms is true and accurate in all material

- 6 -

COMPLAINT

respects. I understand that knowingly making a false statement to obtain a guaranteed loan from the SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

41.    Similar to First Draw PPP loan applications, within Second Draw PPP loan applications, Second Draw PPP loan applicants were asked to mark Yes or No in response to the following question 3.

Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as addendum A.

42.    Addendum A was supposed to include all other businesses with common management and ownership, i.e., affiliated entities. Common management and ownership are defined in federal regulations 13 C.F.R. §§ 121.103(e) and 121.301(f). If one or more officers, directors, managing members or general partners of a business controls the Board of Directors or the management of another business, the businesses are affiliated. 13 C.F.R. § 121.103(e). Common ownership can be established in a number of ways. 13 C.F.R. § 121.301(f). Either common management or ownership is sufficient on their own to establish affiliation.

43.    The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act and federal regulations specified that applicants were only eligible for Second Draw PPP loans if affiliated entities had under 300 employees with limited exception. Unlike with the First Draw PPP loans, Second Draw applicants were not eligible simply because they met a pertinent industry size standard or the alternative size standard. The Second Draw PPP loan application makes this abundantly clear in the application itself, stating the following in bold:

**Number of Employees (including affiliates, if applicable; may not exceed 300 unless "per location" exception applies):**

The applicant must list the number of employees, including affiliates. Moreover, the applicant must later certify to meeting this eligibility criteria.

44.    As with First Draw PPP loan applications, Second Draw PPP loan applications also

1  include the following certification:

2       Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

3      45.    For Second Draw PPP loan applications, applicants must also make the following

4  additional certification.

5       The Applicant has realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period. For loans greater than $150,000, Applicant has

6       provided documentation to the lender substantiating the decline in gross receipts. For loans of $150,000 or less, Applicant will provide documentation substantiating the

7       decline in gross receipts upon or before seeking loan forgives for the Second Draw Paycheck Protection Program Loan or upon SBA request.

8

9      46.    When applying for forgiveness for a Second Draw PPP loan, applicants had to

10  certify that PPP loan proceeds were used for eligible purposes and certify that information provided

11  in all supporting documents and forms is true and correct in all material respects.

12  **FALSE CLAIMS AND STATEMENTS WITH PPP APPLICATIONS**

13      47.    At least five Hoehn Motors dealerships applied for First Draw PPP loans with Zions

14  Bank. Among other reasons, these dealerships were not eligible for First Draw PPP loans because

15  affiliated entities collectively had more than 500 employees, exceeded the industry size standard

16  employee count for new car dealerships which is only 200 employees, and held real estate worth

17  tens of millions of dollars. At least three Hoehn Motors dealerships applied for Second Draw PPP

18  loans with Zions Bank. Among other reasons, these dealerships were not eligible for Second Draw

19  PPP loans because affiliated entities of Hoehn Motors had more than 300 employees.

20      48.    With respect to both First Draw PPP loans and Second Draw PPP loans, dealerships

21  and real estate holding companies are affiliated for two distinct reasons which are each sufficient on

22  their own to establish affiliation. First, there is common management because Susanah Hoehn

23  Peterson is an officer and registered agent of affiliated entities of Hoehn Motors; Theodore William

24  Hoehn III is an officer and director of certain affiliated entities of Hoehn Motors; and Theodore

25  William Hoehn IV and Robert Austin Hoehn are managers of certain affiliated entities of Hoehn

26  Motors. Second, there is common ownership because Susanah Hoehn Peterson, William Hoehn III,

27  William Hoehn IV and Robert Austin Hoehn together own interests in Hoehn Motors dealerships

28  and the property where these dealerships are located.

49.     Hoehn Motors Inc. doing business as Mercedes-Benz of Carlsbad applied for a First Draw PPP loan in the amount of $4,390,700 with Zions Bank which was approved on May 1, 2020. Hoehn Motors Inc. received forgiveness for the First Draw PPP loan. However, in its PPP application, Hoehn Motors Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income or financial need of all affiliated entities.

50.     The Hoehn Company Inc. doing business as Hoehn Honda Carlsbad applied for a First Draw PPP loan in the amount of $1,475,100 with Zions Bank which was approved on May 1, 2020 and a Second Draw PPP loan in the amount of $1,277,672 with Zions Bank which was approved on March 15, 2021. The Hoehn Company Inc. received forgiveness for both the First Draw PPP loan and Second Draw PPP loan. However, in its PPP applications, The Hoehn Company Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income or financial need of all affiliated entities. Moreover, in the Second Draw PPP loan application, The Hoehn Company Inc. did not list an accurate number of employees that included employees at all affiliated entities. Applying with only a select subset of dealerships also made it impossible for lenders to assess whether affiliated entities suffered the sufficient economic loss required for Second Draw PPP loan eligibility.

51.     Hoehn JLR, Inc. doing business as Land Rover Carlsbad, Jaguar Carlsbad applied for a First Draw PPP loan in the amount of $1,012,200 with Zions Bank which was approved on April 30, 2020. Hoehn JLR, Inc. received forgiveness for the First Draw PPP loan. However, in its PPP application, Hoehn JLR, Inc. did not identify all affiliated entities or otherwise accurately represent the number of employees, tangible net worth, income or financial need of all affiliated entities.

52.     Hoehn Buick GMC Cadillac Inc. doing business as Hoehn Buick GMC Cadillac applied for a First Draw PPP loan in the amount of $923,500 with Zions Bank which was approved on April 15, 2020 and a Second Draw PPP loan in the amount of $783,442 with Zions Bank which was approved on March 17, 2021. Hoehn Buick GMC Cadillac Inc. received forgiveness for both the First Draw PPP loan and Second Draw PPP loan. However, in its PPP applications, Hoehn Buick GMC Cadillac Inc. did not identify all affiliated entities or otherwise accurately represent the

1 number of employees, tangible net worth, income or financial need of all affiliated entities.

2 Moreover, in the Second Draw PPP loan application, Hoehn Buick GMC Cadillac Inc. did not list

3 an accurate number of employees that included employees at all affiliated entities. Applying with

4 only a select subset of dealerships also made it impossible for lenders to assess whether affiliated

5 entities suffered the sufficient economic loss required for Second Draw PPP loan eligibility.

6      53.    Hoehn of Temecula Inc. doing business as Audi Temecula applied for a First Draw

7 PPP loan in the amount of $707,100 with Zions Bank which was approved on April 16, 2020 and a

8 Second Draw PPP loan in the amount of $513,467 with Zions Bank which was approved on March

9 17, 2021. Hoehn of Temecula Inc. received forgiveness for both the First Draw PPP loan and

10 Second Draw PPP loan. However, in PPP applications, Hoehn of Temecula Inc. did not identify all

11 affiliated entities or otherwise accurately represent the number of employees, tangible net worth,

12 income or financial need of all affiliated entities. Moreover, in the Second Draw PPP loan

13 application, Hoehn of Temecula Inc. did not list an accurate number of employees that included

14 employees at all affiliated entities. Applying with only a select subset of dealerships also made it

15 impossible for lenders to assess whether affiliated entities suffered the sufficient economic loss

16 required for Second Draw PPP loan eligibility.

17      54.    Hoehn Group LLC withheld information from PPP loan applications that would have

18 further shown that Hoehn Motors and affiliated entities were ineligible for PPP loans.

19      55.    Hoehn Enterprise I LLC withheld information from PPP loan applications that would

20 have further shown that Hoehn Motors and affiliated entities were ineligible for PPP loans.

21      56.    Hoehn Enterprise 4 Temecula LLC withheld information from PPP loan applications

22 that would have further shown that Hoehn Motors and affiliated entities were ineligible for PPP

23 loans.

24      57.    Hoehn JLR LLC withheld information from PPP loan applications that would have

25 further shown that Hoehn Motors and affiliated entities were ineligible for PPP loans.

26      58.    Susanah Hoehn Peterson, William Hoehn III, William Hoehn IV and Robert Austin

27 Hoehn withheld information from PPP loan applications that would have further shown that Hoehn

28 Motors and affiliated entities were ineligible for PPP loans, such as information showing that

1  collectively affiliated entities of Hoehn Motors have many hundreds of employees. Even in PPP

2  applications themselves, Defendants listed **at least 551 employees** across applications during the

3  same loan draw period, which does not include a large Porsche dealership and an additional Audi

4  dealership which did not separately apply for PPP loans. A table showing applicant names and loan

5  amounts is below. Affiliated entities of Hoehn Motors obtained **at least $11,083,181 of PPP loans**,

6  including **at least $2,574,581 of Second Draw PPP loans**.

FIRST DRAW PPP LOANS

| Applicant | Loan Amount |
|---|---|
| Hoehn Motors Inc. | $4,390,700 |
| The Hoehn Company Inc. | $1,475,100 |
| Hoehn JLR, Inc. | $1,012,200 |
| Hoehn Buick GMC Cadillac Inc. | $923,500 |
| Hoehn of Temecula Inc. | $707,100 |
| Total | **$8,508,600** |

SECOND DRAW PPP LOANS

| Applicant | Loan Amount |
|---|---|
| The Hoehn Company Inc. | $1,277,672 |
| Hoehn Buick GMC Cadillac Inc. | $783,442 |
| Hoehn of Temecula Inc. | $513,467 |
| Total | **$2,574,581** |

**<u>CAUSES OF ACTION</u>**

**FIRST CAUSE OF ACTION**
**Submission of False Claim**
**31 U.S.C. § 3729(a)(1)(A)**

59.     Relator incorporates all of the allegations in the above paragraphs as though fully alleged herein.

60.     A party makes a false claim when they knowingly present, or cause to be presented, a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1)(A).

61.     Defendants knowingly made false claims when they certified that they were eligible for PPP loans and that all information included with their application was true and accurate in material respects.

62.     Without these certifications, the United States would not have provided Defendants with the millions of dollars of PPP loans that Defendants received.

63.     Without these certifications, the United States would not have provided lenders with tens of thousands of dollars of loan processing fees.

64.     The United States thus suffered actual damages of millions of dollars and should be awarded three times these damages and should be awarded maximum penalties for each violation of 31 U.S.C. § 3729(a)(1)(A).

**SECOND CAUSE OF ACTION**
**False Statement in Support of Claim**
**31 U.S.C. § 3729(a)(1)(B)**

65.     Relator incorporates all of the allegations in the above paragraphs as though fully alleged herein.

66.     A party makes a false claim when they knowingly make, uses, or cause to be made or used, a false record or statement material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(B).

67.     Defendants knowingly made false statements about their size when they did not identify or otherwise provide information on all affiliated entities in their PPP loan applications.

68.     Without these false statements, the United States would not have provided Defendants with the millions of dollars of PPP loans that Defendants received.

69.     Without these false statements, the United States would not have provided lenders with tens of thousands of dollars of loan processing fees.

70.     The United States thus suffered actual damages of millions of dollars and should be awarded three times these damages and should be awarded maximum penalties for each violation of 31 U.S.C. § 3729(a)(1)(B).

### THIRD CAUSE OF ACTION
### Conspiracy to Violate the False Claims Act
### 31 U.S.C. § 3729(a)(1)(C)

71.     Relator incorporates all of the allegations in the above paragraphs as though fully alleged herein.

72.     A party violates the False Claims Act when it has conspired to commit a violation of particular subparagraphs of the Act, including subparagraphs (a)(1)(A), (B) or (G). 31 U.S.C. § 3729(a)(1)(C).

73.     Defendants knowingly conspired to violate the False Claims Act when they separately applied for PPP loans through various lenders, provided information that did not identify the full size of affiliated entities and retained loan proceeds.

74.     If not for Defendants' provision of information that did not identify the full size of affiliated entities and retention of loan proceeds, the United States would not have provided Defendants with the millions of dollars of PPP loans that Defendants received.

75.     Without Defendants' provision of information that did not identify the full size of affiliated entities and retention of loan proceeds, the United States would not have provided lenders with tens of thousands of dollars of loan processing fees.

76.     The United States thus suffered actual damages of millions of dollars and should be awarded three times these damages and should be awarded maximum penalties for each violation of 31 U.S.C. § 3729(a)(1)(C).

### FOURTH CAUSE OF ACTION
### Avoidance of Obligation to Pay Government
### 31 U.S.C. § 3729(a)(1)(G)

77.     Relator incorporates all of the allegations in the above paragraphs as though fully alleged herein.

78.     A party knowingly makes, uses or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transit money or property to the government. 31 U.S.C. § 3729(a)(1)(G).

79.     Defendants knowingly avoided their obligation to pay the government when they retained PPP loan proceeds where the proceeds were not used for eligible purposes.

80.     Because Defendants retained PPP loan proceeds, the United States lost millions of dollars.

81.     The United States thus suffered actual damages of millions of dollars and should be awarded three times these damages and should be awarded maximum penalties for each violation of 31 U.S.C. § 3729(a)(1)(G).

## **PRAYER FOR RELIEF**

WHEREFORE, Relator respectfully prays that this Court:

a.     Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, enter a judgement against Defendants for three times the actual damages that the United States of America has sustained because of Defendants' actions, plus the maximum civil penalty for each violation of 31 U.S.C. § 3729;

b.     Pursuant to 31 U.S.C. § 3730(d), award Relator the maximum amount of proceeds of this action allowed, including reasonable attorneys' fees and costs;

c.     If the United States elects to intervene and proceed with this action, award Relator between 15% and 25% of the proceeds of this action or of any settlement in accordance with 31 U.S.C. § 3730(d)(1);

d.     If the United States does not proceed with this action, award Relator between 25% and 30% of the proceeds of this action or any settlement in accordance with 31 U.S.C. § 3730(d)(2);

e.     If the United States elects to pursue an alternate remedy, award Relator a share of that alternate remedy in accordance with 31 U.S.C. § 3730(c)(5);

f.     Award the United States and Relator prejudgment and post judgment interest; and

g.     Award the United States and Relator all other relief which they are reasonably

1   entitled to receive.

2                          **<u>DEMAND FOR JURY TRIAL</u>**

3            Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Relator, on behalf of the

4   United States of America, demands a jury trial.

5

6   Respectfully submitted,

7   Dated: September 9, 2024

8                                        Signature:  *Aaron Ezroj*

9                                               By: AARON EZROJ

10

11                                           Attorney for Relator

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

- 15 -
COMPLAINT